COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



ERNESTO CASTRO-VALENZUELA,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 


No. 08-08-00317-CR



Appeal from the


243rd District Court


of El Paso County, Texas


(TC# 20080D02850)


O P I N I O N


 Ernesto Castro-Valenzuela, Appellant, was convicted of injury to an elderly individual and
sentenced to ten years' confinement. In three issues on appeal, Appellant complains of the trial
court's admission of excited utterances, the violation of his confrontation rights, and the
impeachment of two witnesses. We affirm.

BACKGROUND


 On May 28, 2008, Officers Loya and Castaneda were dispatched to a residence located at
3615 East Missouri in reference to an "unknown problem." (1) Upon arrival, the officers noticed debris
and lawn chairs "thrown in front of the house," that the gate was off, that part of the fence was
broken and laying on the sidewalk, and that the front door was broken off. Officer Loya also saw
three or four males getting into a vehicle in a nearby parking lot. Because Officer Loya did not know
what type of call they were responding to, he ran to the group and detained them to determine their
involvement.

 Meanwhile, Officer Castaneda approached the front entrance of the house after seeing a
woman hiding outside "like she was in danger of something" and pointing towards the inside of the
house. Peering past the opened door, Officer Castaneda saw Appellant and ordered him to come out. 
Appellant complied and Officer Castaneda handcuffed him for safety reasons. At that point, Officer
Loya determined that the group was not involved, and upon seeing Officer Castaneda handcuffing
Appellant, Officer Loya went to assist. Appellant appeared to be intoxicated, and he was escorted
to the patrol car. Once Appellant was inside the car, Officer Loya went to speak with Salvador
Castro, who was 84 years old, to determine what was going on.

 Officer Loya observed a small cut on the bridge of Castro's nose, a cut on his forehead, a
laceration on his right forearm, a cut on his left forearm, and various other small cuts. The officer
noted that Castro appeared to be scared - Castro was shaking and his eyes were wide open and
"glazy," conditions he has seen in other elderly persons when they were afraid. Castro's voice was
shaking, he talked in incomplete sentences, and "[h]e couldn't piece together what had happened." 
According to Officer Loya, Castro told him that Appellant, his grandson, hit him by punching him
in the face two to three times, pushing him against the fence, which caused him to fall down, and
kicking him multiple times while he was on the ground.

 After speaking to Castro, Officer Loya made contact with Beverly Barragan and Andy Baca,
who lived at 3610 East Missouri. The officer noted that Barragan appeared to be scared - her voice
was shaking, she was trembling, her eyes were wide open, as if she "saw something traumatic," and
she was nervous and afraid. Baca was not as shaken up as Barragan. According to Officer Loya,
Barragan told him that she saw Appellant assault Castro by striking him in the face with closed fists
two or three times, pulling him to the ground, and kicking him two or three times while Castro was
on the ground. After speaking to Barragan, the officers formally arrested Appellant.

 At trial, Castro testified that the door, gate, and fence fell off by themselves. He denied that
anyone "threw" him or "hit" him, and explained that the cuts on his nose, forehead, and arms were
caused when he scratched himself and fell. Similarly, Barragan, who also testified at trial, denied
witnessing anything outside her house that night. Her upsetting demeanor that night was because
of something that happened between her and Baca. She denied speaking to the police, claiming that
the police only spoke to Baca.

EXCITED UTTERANCES

 Appellant's first issue, and part of his second issue, contend that the trial court abused its
discretion by overruling his hearsay objections to Officer Loya's recitation of statements made by
Castro and Barragan just minutes after the assault occurred. We disagree.Standard of Review Hearsay is a statement offered by one other than the declarant to prove the truth of the matter
asserted in that statement at trial. Tex. R. Evid. 801(d). Hearsay is not admissible except as
provided by statute or the evidentiary rules. Tex. R. Evid. 802. Excited utterances, however, are
not excluded from the proscribed hearsay rule. Tex. R. Evid. 803(2). Because they are
"statement[s] relating to a startling event or condition made while the declarant was under the stress
of excitement caused by the event or condition," excited utterances are inherently reliable and
therefore admissible. Tex. R. Evid. 803(2); Salazar v. State, 38 S.W.3d 141, 154 (Tex. Crim. App.
2001).

 A trial court's decision to admit a statement as an excited utterance is reviewed for an abuse
of discretion. Wall v. State, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). Some relevant factors
that aid in determining whether a hearsay statement qualifies as an excited utterance include the time
elapsed and whether the statement was in response to a question. Salazar, 38 S.W.3d at 154. 
However, the critical determination is whether the declarant was still dominated by the emotions,
excitement, fear, or pain of the event at the time of the statement. Id.

Application

 Here, both Castro's and Barragan's statements were undoubtedly related to a startling event 
- Castro had just been assaulted. Second, the statements were made approximately eight to ten
minutes after the assault occurred; therefore, only a short amount of time had elapsed. Third, both
Castro and Barragan were still under the stress of excitement caused by the assault and dominated
by the emotions, fear, and pain of the event. Indeed, Officer Loya testified that Castro was scared
and shaking, that his eyes were wide open and "glazy," that his voice was shaky, and that he spoke
in incomplete sentences and could not piece together what happened. Similarly, Officer Loya
testified that Barragan looked scared, was shaking, and trembling, that her eyes were wide as if she
just saw something traumatic, that she seemed nervous and afraid, and that her voice was crackling. 
Based on these factors, we conclude that the trial court did not abuse its discretion by admitting the
statements under the excited utterance exception. See Zuliani v. State, 97 S.W.3d 589, 596 (Tex.
Crim. App. 2003) (holding that statements made twenty hours after an incident by an individual who
was "scared to death" and "tired" were excited utterances); Reyes v. State, 48 S.W.3d 917, 920 (Tex.
App. - Fort Worth 2001, no pet.) (concluding that witness's statements made fifteen minutes after
an assault were excited utterances because the witness was "dominated by the emotion, fear, pain,
and excitement resulting from appellant's assault, and that her statement was related to the startling
occurrence of the assault"); Wells v. State, No. 04-08-00668-CR, -- S.W.3d --, 2010 WL 1486642,
at *5-6 (Tex. App. - San Antonio Apr. 14, 2010, no pet. h.) (not yet reported) (finding statements
admissible as excited utterances when wife related what husband told her after the murder occurred;
short time had passed, the statements related to the event, and husband was "completely out of it,"
"rambling," and "really . . . nervous and scared" when he made the statements).

 Nevertheless, Appellant argues that the excited utterances were not trustworthy as Officer
Loya was not a credible witness. He points out that Officer Loya's report was "poor" as it did not
recite whether he or his partner, Officer Castaneda, spoke to the complainant, much less whether
they spoke to him in English or Spanish. He also asserts that the report does not contain every
statement uttered by Castro that Officer Loya testified to at trial, nor does it separate those statements
made by Barragan from those by Andy Baca. Further, Appellant contends that Officer Loya's
testimony was conflicting as it differed on voir dire, direct, and cross examinations. (2) Thus,
Appellant concludes that Officer Loya's "poor" report writing and reliance solely on his "faulty"
memory did not make the excited utterances trustworthy.

 However, excited utterances are inherently reliable. Because the declarant is in the instant
grip of violent emotion, excitement, or pain when the statement is made, he ordinarily loses the
capacity for reflection necessary for fabrication, and the truth comes out. Zuliani, 97 S.W.3d at 595. 
In other words, the statements are trustworthy because they represent an event speaking through the
person rather than the person speaking about the event. Id.; Wells, 2010 WL 1486642, at *5. 
Therefore, whether Officer Loya wrote a "poor" report or had a "faulty" memory did not make the
excited utterances testified to untrustworthy. Rather, those factors attached to the weight and
credibility of his testimony, which was an issue for the trier of fact. See Marquez v. State, 165
S.W.3d 741, 747 (Tex. App. - San Antonio 2005, pet. ref'd); Tex. Dept. of Public Safety v. Walter,
979 S.W.2d 22, 27 (Tex. App. - Houston [14th Dist.] 1998, no pet.).

 Having determined that the trial court did not abuse its discretion in admitting the statements
as excited utterances, we overrule Appellant's first issue and the first part of Appellant's second
issue.

CONFRONTATION RIGHTS

 The remaining portion of Appellant's second issue alleges a Crawford (3) violation. According
to Appellant, Baca, not Barragan, made the excited utterances to Officer Loya, and since Baca did
not testify at trial, Appellant concludes that his confrontation rights were violated when Baca's
statements were admitted through Officer Loya's testimony under the guise that they were 
Barragan's statements. Appellant does not argue that if the statements were actually Barragan's, that
there was any Crawford violation.

Applicable Law

 The Sixth Amendment guarantees the accused, in every criminal prosecution, the right "to
be confronted with the witnesses against him." U.S. Const. amend. VI. Generally, that guarantee
extends to out-of-court statements used as evidence against the accused at trial. Crawford, 541 U.S.
at 51-54. If those statements are testimonial, then the Confrontation Clause bars their admission
when the declarant does not appear at trial, unless he was unavailable and the accused had a prior
opportunity for cross-examination. Crawford, 541 U.S. at 53-54. Conversely, if the declarant
appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of
his prior out-of-court testimonial statements. Id. at 59 n.9. We review the trial court's determination
on the admissibility of such evidence under a bifurcated standard, giving deference to the court's
findings regarding any pertinent historical facts but reviewing de novo the court's application of the
law to those facts. Wall, 184 S.W.3d at 742-43; Grey v. State, 299 S.W.3d 902, 907 (Tex. App. -
Austin 2009, pet. ref'd).

Application

 Here, Appellant argues that Officer Loya's recitation of Barragan's statements were actually
statements made by Baca, who did not appear at trial. If that were true, Appellant's confrontation
rights may have been violated if the statements themselves were testimonial. Crawford, 541 U.S.
at 53-54 (testimonial statements by an absent declarant are inadmissible unless he was unavailable
and the accused had a prior opportunity for cross-examination). But Officer Loya did not testify to
any statements made by Baca, nor does the record reflect that Officer Loya believed Barragan's
statements were actually uttered by Baca. Rather, Officer Loya specifically testified that the
statements were made by a woman who appeared to be in her middle 40's to early 50's. He further
identified the declarant as Beverly Barragan and noted that she looked as if she just saw something
traumatic, that she was trembling, and that her voice was shaky and crackling. Based on this
evidence, the trial court, as the gatekeeper of the admissibility of evidence, was entitled to believe
that the statements were made by Barragan, not Baca, and in reviewing the admissibility of such
evidence, we afford due deference to that implicit and historical determination. See Manzi v. State,
88 S.W.3d 240, 244 (Tex. Crim. App. 2002) ("Trial courts are the traditional finders of fact, and
their determinations of historical fact are entitled to deference. The Court of Appeals correctly
employed a deferential standard of review of the trial court's resolution of the historical facts from
conflicting affidavits.").

 Because we defer to the trial court's determination that Barragan, not Baca, uttered the
statements, and because none of Baca's statements were admitted at trial, there can be no
confrontation clause violation in this regard. See Stringer v. State, 276 S.W.3d 95, 101 (Tex. App.
- Fort Worth 2008) (questioning how a defendant's confrontation rights are violated by statements
in a document that was not admitted into evidence), aff'd on other grounds, 309 S.W.3d 42 (Tex.
Crim. App. 2010). As Appellant's confrontation clause complaint on appeal is only directed at
Baca's alleged statements and not at any other witnesses' statements, we do not address whether the
admission of any statements made by Castro or Barragan violated Appellant's confrontation rights. 
We therefore overrule the remaining portion of Appellant's second issue.

HUGHES VIOLATION

 Citing Hughes v. State, 4 S.W.3d 1 (Tex. Crim. App. 1999), Appellant's last issue contends
that the trial court erred by allowing the State to call Castro and Barragan when it knew they would
testify unfavorably and was solely calling them for the purpose of eliciting otherwise inadmissible
impeachment evidence. However, Appellant's complaint is not preserved for our review.

Preservation of Error

 As preservation of error is a systemic requirement, we may review it on our own motion. 
Martinez v. State, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); Hughes v. State, 878 S.W.2d
142, 151 (Tex. Crim. App. 1993), cert. denied, 511 U.S. 1152, 114 S.Ct. 2184, 128 L.Ed.2d 902
(1994). Generally, to preserve an issue for our review concerning the admission of erroneous
evidence, the record must demonstrate that the defendant timely objected to that evidence at trial,
stating the specific grounds for the desired ruling. Tex. R. App. P. 33.1(a)(1); Hatley v. State, 206
S.W.3d 710, 720 (Tex. App. - Texarkana 2006, no pet.). Further, the trial court must have ruled on
the request, objection, or motion, either expressly or implicitly, or the complaining party must have
objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); Mendez v. State, 138 S.W.3d
334, 341 (Tex. Crim. App. 2004). An objection stating one legal theory may not be used to support
another legal theory on appeal. See Camacho v. State, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993).

Application

 In a hearing prior to empaneling the venire panel, the trial court granted the State's request
for a writ of attachment for Barragan as she failed to appear. The State further informed the court
that it suspected that Castro and Barragan may change their stories. Appellant then objected that "the
only reason that we can see [that Officer Loya] will be called in this case is to impeach" Castro and
Barragan. Without ruling on the objection, the trial court responded that the objection was too soon
and that he should raise it "when we get there."

 After a jury was selected, Appellant objected to any statements made by Castro and Barragan
that would be elicited during Officer Loya's testimony as a violation of Crawford, and again, the trial
court told Appellant to raise the objections when the officer testified. During Officer Loya's
testimony, Appellant objected to "hearsay" and "confrontation" after the State laid the foundation
for Castro's excited utterances. In a hearing outside the presence of the jury, Appellant argued that
the statements lacked reliability and therefore did not meet the excited-utterance exception.
Appellant further asserted that under Crawford, he had the right to cross-examine the witness before
Officer Loya testified to the utterances. The trial court found no Crawford violation and that the
statements were excited utterances. Officer Loya then testified before the jury to Castro's
statements.

 Later, after Officer Loya, Officer Castenada, Castro, and an investigator from the District
Attorney's Office testified, the State wanted to recall Officer Loya for purposes of admitting
Barragan's excited utterances before Barragan testified. The State noted that it did "not want to run
afoul of the rule against impeaching a witness that we call." Appellant did not object that calling
Officer Loya would violate the Hughes rule. The trial court did not believe that the order of
witnesses would "make any difference" as the complained-of hearsay statements were admissible
as excited utterances, an exception to the hearsay rule, not as impeachment evidence. Further, the
trial court was made aware that Barragan received a bad spider bite to her foot and would need to
leave. Thus, the trial court instructed the State to call Barragan first.

 After Barragan testified, another hearing outside the presence of the jury was had to
determine whether Barragan made any excited utterances to Officer Loya. When the parties finished
questioning Officer Loya on voir dire, Appellant argued that the statements were not excited
utterances. The trial court disagreed and found the statements to be excited utterances. Officer Loya
then testified before the jury, and the only objection Appellant raised during his testimony was
"hearsay," which was overruled.

 We have carefully reviewed the record and cannot find any objection, save the objection
made before jury voir dire, claiming that the State's sole purpose in calling Castro and Barragan was
to elicit otherwise inadmissible impeachment evidence. Nor has Appellant in his brief attempted to
demonstrate that he raised this improper impeachment claim at any time before, during, or after any
witnesses' testimony. The initial objection was certainly inadequate to preserve error as Appellant
did not obtain an adverse ruling but rather acquiesced to raising any such objections later during the
officer's testimony, which he never did. See Wooten v. State, 267 S.W.3d 289, 309 (Tex. App. -
Houston [14th Dist.] 2008, pet. ref'd) ("Because appellant did not receive an adverse ruling,
appellant has not preserved the issue for our review as to the statements appellant made to the
paramedic as contained in the hospital records."). Moreover, Appellant cannot rely on the State's
initiation of the possible Hughes violation later during trial since Appellant never objected at those
times that the State was calling the witnesses solely to impeach their testimony through Officer Loya. 
See, e.g., Swain v. State, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (arguments not specifically
stated in defendant's motion to suppress or at hearing were not preserved for appeal); Robinson v.
State, 728 S.W.2d 858, 860 (Tex. App. - Austin 1987, no pet.) (stating that "appellant has the
burden to offer a timely objection at trial on specific grounds and to obtain a ruling by the court as
to the objection") (emphasis added). Simply, Appellant did not follow up on the State's concern
with an objection, nor did he raise the complaint now argued on appeal when the State called Officer
Loya to the stand. The only objections raised by Appellant and ruled on by the trial court were
general "hearsay" objections, but those do not comport with the argument now urged on appeal. 
See Goff v. State, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996) ("Where his trial objections do not
comport with his arguments on appeal, appellant has failed to preserve error on those issues."). 
Because Appellant never raised a timely Hughes objection at trial, nor did he obtain an adverse
ruling on his premature objection, his complaint is not preserved for our review. See Starnes v.
State, No. 06-06-00099-CR , 2007 WL 1217339, at *2 (Tex. App. - Texarkana Apr. 26, 2007, no
pet.) (mem. op., not designated for publication); Scott v. State, No. 01-06-00209-CR, 2007 WL
1119911, at *4 (Tex. App. - Houston [1st Dist.] Apr. 12, 2007, pet. ref'd) (mem. op., not designated
for publication); Castillo v. State, No. 08-04-00377-CR, 2006 WL 1710062, at *8 (Tex. App. - El
Paso June 22, 2006, no pet.) (op., not designated for publication); Hardeman v. State, No. 10-01-269-CR, 2003 WL 21357262, at *3 (Tex. App. - Waco June 11, 2003, pet. ref'd) (op., not
designated for publication) (cases holding Hughes violation not preserved for appellate review when
appellant never made the argument to the trial court). Accordingly, Appellant's third issue is
overruled. (4)

CONCLUSION

 Having overruled Appellant's issues, we affirm the trial court's judgment.


 GUADALUPE RIVERA, Justice


July 28, 2010


Before Chew, C.J., McClure, and Rivera, JJ.


(Do Not Publish)

1. The 911 call was made from the house located across the street at 3610 East Missouri.
2. Appellant's brief in this regard states:


Officer Loya prided himself on his good memory and didn't feel the need to write down statements
made by the complaining witness or other witnesses. But, his testimony demonstrated that his
memory was faulty. Some examples: Officer Loya at first told the jury that when Appellant was
detained and placed in handcuffs, he was yelling out things like "Leave me alone. I didn't do
anything." Later he told the jury that Appellant was pretty calm and smiling when he was placed
in the patrol car, and he remembered Appellant saying (not yelling) "Hey, I didn't do anything. 
Let me go." Officer Loya said he met with the person across the street at 3614 E. Missouri who
had made the 911 call. He repeated that he met with a man and a woman at 3614 E. Missouri, but
he couldn't recall their names. He said that he met with the woman inside her fence. Later after
the woman, Beverly Barragan, testified that she lived at 3610 Missouri, he changed his testimony
when he was taken on Voir Dire to saying that he spoke to a man and woman across the street at
3610 E. Missouri. During his Voir Dire testimony, Officer Loya stated that he met with the man
and woman outside on the lawn. Later when he testified before the jury, he said he met with the
man and woman on her front porch. Outside the presence of the jury, Officer Loya testified that
Ms. Barragan told him that she saw the Appellant push Mr. Castro up against the fence, grab his
arm and throw him to the ground. When he testified before the jury, his testimony was that Ms.
Barragan saw Appellant grab Mr. Castro by the arm and pull him to the ground.
3. Crawford v. Washington, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004).
4. Even if we were to conclude that Appellant preserved his complaint for our review, we note that the trial
court expressly admitted the statements as excited utterances, not for impeachment purposes. As excited utterances
are excluded from the hearsay rule, this was not "otherwise inadmissible" evidence that the State was offering for
impeachment purposes. Compare Hughes, 4 S.W.3d at 5 (a party may not use impeachment as a mere subterfuge to
get otherwise inadmissible evidence before the jury), with Klein v. State, 273 S.W.3d 297, 313 (Tex. Crim. App.
2008) (concluding prior statements were not offered to impeach witness's testimony as otherwise inadmissible
evidence as the statements rebutted an implied charge of recent fabrication); see also Hernandez v. State, No. 03-07-00040-CR, 2010 WL 391850, at *18 (Tex. App. - Austin Feb. 5, 2010, no pet.) (mem. op., not designated for
publication) (evidence not admitted to impeach witness but rather to show that defendant had improper intent and to
rebut the defensive theories of accident or mistake). Further, nothing in the record suggests that the State knew for
certain that Castro and Barragan would change their stories; rather, the State only suspected that they would. See
Kelly v. State, 60 S.W.3d 299, 302 (Tex. App. - Dallas 2001, no pet.) (finding no Hughes violation when "although
the State 'suspected' its witness could turn, it had no reason to know this for certain"). Thus, Hughes is inapplicable.