COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ERNESTO CASTRO-VALENZUELA, | § | No. 08-08-00317-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 243rd District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20080D02850) |
| | § | |

**O P I N I O N**

Ernesto Castro-Valenzuela, Appellant, was convicted of injury to an elderly individual and sentenced to ten years' confinement. In three issues on appeal, Appellant complains of the trial court's admission of excited utterances, the violation of his confrontation rights, and the impeachment of two witnesses. We affirm.

**BACKGROUND**

On May 28, 2008, Officers Loya and Castaneda were dispatched to a residence located at 3615 East Missouri in reference to an "unknown problem."[1] Upon arrival, the officers noticed debris and lawn chairs "thrown in front of the house," that the gate was off, that part of the fence was broken and laying on the sidewalk, and that the front door was broken off. Officer Loya also saw three or four males getting into a vehicle in a nearby parking lot. Because Officer Loya did not know what type of call they were responding to, he ran to the group and detained them to determine their involvement.

---

[1] The 911 call was made from the house located across the street at 3610 East Missouri.

Meanwhile, Officer Castaneda approached the front entrance of the house after seeing a woman hiding outside "like she was in danger of something" and pointing towards the inside of the house. Peering past the opened door, Officer Castaneda saw Appellant and ordered him to come out. Appellant complied and Officer Castaneda handcuffed him for safety reasons. At that point, Officer Loya determined that the group was not involved, and upon seeing Officer Castaneda handcuffing Appellant, Officer Loya went to assist. Appellant appeared to be intoxicated, and he was escorted to the patrol car. Once Appellant was inside the car, Officer Loya went to speak with Salvador Castro, who was 84 years old, to determine what was going on.

Officer Loya observed a small cut on the bridge of Castro's nose, a cut on his forehead, a laceration on his right forearm, a cut on his left forearm, and various other small cuts. The officer noted that Castro appeared to be scared – Castro was shaking and his eyes were wide open and "glazy," conditions he has seen in other elderly persons when they were afraid. Castro's voice was shaking, he talked in incomplete sentences, and "[h]e couldn't piece together what had happened." According to Officer Loya, Castro told him that Appellant, his grandson, hit him by punching him in the face two to three times, pushing him against the fence, which caused him to fall down, and kicking him multiple times while he was on the ground.

After speaking to Castro, Officer Loya made contact with Beverly Barragan and Andy Baca, who lived at 3610 East Missouri. The officer noted that Barragan appeared to be scared – her voice was shaking, she was trembling, her eyes were wide open, as if she "saw something traumatic," and she was nervous and afraid. Baca was not as shaken up as Barragan. According to Officer Loya, Barragan told him that she saw Appellant assault Castro by striking him in the face with closed fists two or three times, pulling him to the ground, and kicking him two or three times while Castro was on the ground. After speaking to Barragan, the officers formally arrested Appellant.

At trial, Castro testified that the door, gate, and fence fell off by themselves. He denied that anyone "threw" him or "hit" him, and explained that the cuts on his nose, forehead, and arms were caused when he scratched himself and fell. Similarly, Barragan, who also testified at trial, denied witnessing anything outside her house that night. Her upsetting demeanor that night was because of something that happened between her and Baca. She denied speaking to the police, claiming that the police only spoke to Baca.

## EXCITED UTTERANCES

Appellant's first issue, and part of his second issue, contend that the trial court abused its discretion by overruling his hearsay objections to Officer Loya's recitation of statements made by Castro and Barragan just minutes after the assault occurred. We disagree.

### *Standard of Review*

Hearsay is a statement offered by one other than the declarant to prove the truth of the matter asserted in that statement at trial. TEX. R. EVID. 801(d). Hearsay is not admissible except as provided by statute or the evidentiary rules. TEX. R. EVID. 802. Excited utterances, however, are not excluded from the proscribed hearsay rule. TEX. R. EVID. 803(2). Because they are "statement[s] relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition," excited utterances are inherently reliable and therefore admissible. TEX. R. EVID. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001).

A trial court's decision to admit a statement as an excited utterance is reviewed for an abuse of discretion. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). Some relevant factors that aid in determining whether a hearsay statement qualifies as an excited utterance include the time elapsed and whether the statement was in response to a question. *Salazar*, 38 S.W.3d at 154.

However, the critical determination is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event at the time of the statement. *Id*.

*Application*

Here, both Castro's and Barragan's statements were undoubtedly related to a startling event – Castro had just been assaulted. Second, the statements were made approximately eight to ten minutes after the assault occurred; therefore, only a short amount of time had elapsed. Third, both Castro and Barragan were still under the stress of excitement caused by the assault and dominated by the emotions, fear, and pain of the event. Indeed, Officer Loya testified that Castro was scared and shaking, that his eyes were wide open and "glazy," that his voice was shaky, and that he spoke in incomplete sentences and could not piece together what happened. Similarly, Officer Loya testified that Barragan looked scared, was shaking, and trembling, that her eyes were wide as if she just saw something traumatic, that she seemed nervous and afraid, and that her voice was crackling. Based on these factors, we conclude that the trial court did not abuse its discretion by admitting the statements under the excited utterance exception. *See Zuliani v. State*, 97 S.W.3d 589, 596 (Tex. Crim. App. 2003) (holding that statements made twenty hours after an incident by an individual who was "scared to death" and "tired" were excited utterances); *Reyes v. State*, 48 S.W.3d 917, 920 (Tex. App. – Fort Worth 2001, no pet.) (concluding that witness's statements made fifteen minutes after an assault were excited utterances because the witness was "dominated by the emotion, fear, pain, and excitement resulting from appellant's assault, and that her statement was related to the startling occurrence of the assault"); *Wells v. State*, No. 04-08-00668-CR, — S.W.3d —, 2010 WL 1486642, at *5-6 (Tex. App. – San Antonio Apr. 14, 2010, no pet. h.) (not yet reported) (finding statements admissible as excited utterances when wife related what husband told her after the murder occurred; short time had passed, the statements related to the event, and husband was "completely out of it,"

"rambling," and "really . . . nervous and scared" when he made the statements).

Nevertheless, Appellant argues that the excited utterances were not trustworthy as Officer Loya was not a credible witness. He points out that Officer Loya's report was "poor" as it did not recite whether he or his partner, Officer Castaneda, spoke to the complainant, much less whether they spoke to him in English or Spanish. He also asserts that the report does not contain every statement uttered by Castro that Officer Loya testified to at trial, nor does it separate those statements made by Barragan from those by Andy Baca. Further, Appellant contends that Officer Loya's testimony was conflicting as it differed on voir dire, direct, and cross examinations.[2] Thus, Appellant concludes that Officer Loya's "poor" report writing and reliance solely on his "faulty" memory did not make the excited utterances trustworthy.

However, excited utterances are inherently reliable. Because the declarant is in the instant grip of violent emotion, excitement, or pain when the statement is made, he ordinarily loses the capacity for reflection necessary for fabrication, and the truth comes out. *Zuliani*, 97 S.W.3d at 595. In other words, the statements are trustworthy because they represent an event speaking through the

---

[2] Appellant's brief in this regard states:

Officer Loya prided himself on his good memory and didn't feel the need to write down statements made by the complaining witness or other witnesses. But, his testimony demonstrated that his memory was faulty. Some examples: Officer Loya at first told the jury that when Appellant was detained and placed in handcuffs, he was yelling out things like "Leave me alone. I didn't do anything." Later he told the jury that Appellant was pretty calm and smiling when he was placed in the patrol car, and he remembered Appellant saying (not yelling) "Hey, I didn't do anything. Let me go." Officer Loya said he met with the person across the street at 3614 E. Missouri who had made the 911 call. He repeated that he met with a man and a woman at 3614 E. Missouri, but he couldn't recall their names. He said that he met with the woman inside her fence. Later after the woman, Beverly Barragan, testified that she lived at 3610 Missouri, he changed his testimony when he was taken on Voir Dire to saying that he spoke to a man and woman across the street at 3610 E. Missouri. During his Voir Dire testimony, Officer Loya stated that he met with the man and woman outside on the lawn. Later when he testified before the jury, he said he met with the man and woman on her front porch. Outside the presence of the jury, Officer Loya testified that Ms. Barragan told him that she saw the Appellant push Mr. Castro up against the fence, grab his arm and throw him to the ground. When he testified before the jury, his testimony was that Ms. Barragan saw Appellant grab Mr. Castro by the arm and pull him to the ground.

person rather than the person speaking about the event. *Id.*; *Wells*, 2010 WL 1486642, at *5. Therefore, whether Officer Loya wrote a "poor" report or had a "faulty" memory did not make the excited utterances testified to untrustworthy. Rather, those factors attached to the weight and credibility of his testimony, which was an issue for the trier of fact. *See Marquez v. State*, 165 S.W.3d 741, 747 (Tex. App. – San Antonio 2005, pet. ref'd); *Tex. Dept. of Public Safety v. Walter*, 979 S.W.2d 22, 27 (Tex. App. – Houston [14th Dist.] 1998, no pet.).

Having determined that the trial court did not abuse its discretion in admitting the statements as excited utterances, we overrule Appellant's first issue and the first part of Appellant's second issue.

## CONFRONTATION RIGHTS

The remaining portion of Appellant's second issue alleges a *Crawford*[3] violation. According to Appellant, Baca, not Barragan, made the excited utterances to Officer Loya, and since Baca did not testify at trial, Appellant concludes that his confrontation rights were violated when Baca's statements were admitted through Officer Loya's testimony under the guise that they were Barragan's statements. Appellant does not argue that if the statements were actually Barragan's, that there was any *Crawford* violation.

### Applicable Law

The Sixth Amendment guarantees the accused, in every criminal prosecution, the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. Generally, that guarantee extends to out-of-court statements used as evidence against the accused at trial. *Crawford*, 541 U.S. at 51-54. If those statements are testimonial, then the Confrontation Clause bars their admission when the declarant does not appear at trial, unless he was unavailable and the accused had a prior

---

[3] *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004).

opportunity for cross-examination. *Crawford*, 541 U.S. at 53-54. Conversely, if the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints on the use of his prior out-of-court testimonial statements. *Id*. at 59 n.9. We review the trial court's determination on the admissibility of such evidence under a bifurcated standard, giving deference to the court's findings regarding any pertinent historical facts but reviewing *de novo* the court's application of the law to those facts. *Wall*, 184 S.W.3d at 742-43; *Grey v. State*, 299 S.W.3d 902, 907 (Tex. App. – Austin 2009, pet. ref'd).

*Application*

Here, Appellant argues that Officer Loya's recitation of Barragan's statements were actually statements made by Baca, who did not appear at trial. If that were true, Appellant's confrontation rights may have been violated if the statements themselves were testimonial. *Crawford*, 541 U.S. at 53-54 (testimonial statements by an absent declarant are inadmissible unless he was unavailable and the accused had a prior opportunity for cross-examination). But Officer Loya did not testify to any statements made by Baca, nor does the record reflect that Officer Loya believed Barragan's statements were actually uttered by Baca. Rather, Officer Loya specifically testified that the statements were made by a woman who appeared to be in her middle 40's to early 50's. He further identified the declarant as Beverly Barragan and noted that she looked as if she just saw something traumatic, that she was trembling, and that her voice was shaky and crackling. Based on this evidence, the trial court, as the gatekeeper of the admissibility of evidence, was entitled to believe that the statements were made by Barragan, not Baca, and in reviewing the admissibility of such evidence, we afford due deference to that implicit and historical determination. *See Manzi v. State*, 88 S.W.3d 240, 244 (Tex. Crim. App. 2002) ("Trial courts are the traditional finders of fact, and their determinations of historical fact are entitled to deference. The Court of Appeals correctly

employed a deferential standard of review of the trial court's resolution of the historical facts from conflicting affidavits.").

Because we defer to the trial court's determination that Barragan, not Baca, uttered the statements, and because none of Baca's statements were admitted at trial, there can be no confrontation clause violation in this regard. *See Stringer v. State*, 276 S.W.3d 95, 101 (Tex. App. – Fort Worth 2008) (questioning how a defendant's confrontation rights are violated by statements in a document that was not admitted into evidence), *aff'd on other grounds,* 309 S.W.3d 42 (Tex. Crim. App. 2010). As Appellant's confrontation clause complaint on appeal is only directed at Baca's alleged statements and not at any other witnesses' statements, we do not address whether the admission of any statements made by Castro or Barragan violated Appellant's confrontation rights. We therefore overrule the remaining portion of Appellant's second issue.

## HUGHES VIOLATION

Citing *Hughes v. State*, 4 S.W.3d 1 (Tex. Crim. App. 1999), Appellant's last issue contends that the trial court erred by allowing the State to call Castro and Barragan when it knew they would testify unfavorably and was solely calling them for the purpose of eliciting otherwise inadmissible impeachment evidence. However, Appellant's complaint is not preserved for our review.

### *Preservation of Error*

As preservation of error is a systemic requirement, we may review it on our own motion. *Martinez v. State*, 22 S.W.3d 504, 507 n.7 (Tex. Crim. App. 2000); *Hughes v. State*, 878 S.W.2d 142, 151 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1152, 114 S.Ct. 2184, 128 L.Ed.2d 902 (1994). Generally, to preserve an issue for our review concerning the admission of erroneous evidence, the record must demonstrate that the defendant timely objected to that evidence at trial, stating the specific grounds for the desired ruling. TEX. R. APP. P. 33.1(a)(1); *Hatley v. State*, 206

S.W.3d 710, 720 (Tex. App. – Texarkana 2006, no pet.). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). An objection stating one legal theory may not be used to support another legal theory on appeal. *See Camacho v. State*, 864 S.W.2d 524, 533 (Tex. Crim. App. 1993).

*Application*

In a hearing prior to empaneling the venire panel, the trial court granted the State's request for a writ of attachment for Barragan as she failed to appear. The State further informed the court that it suspected that Castro and Barragan may change their stories. Appellant then objected that "the only reason that we can see [that Officer Loya] will be called in this case is to impeach" Castro and Barragan. Without ruling on the objection, the trial court responded that the objection was too soon and that he should raise it "when we get there."

After a jury was selected, Appellant objected to any statements made by Castro and Barragan that would be elicited during Officer Loya's testimony as a violation of *Crawford*, and again, the trial court told Appellant to raise the objections when the officer testified. During Officer Loya's testimony, Appellant objected to "hearsay" and "confrontation" after the State laid the foundation for Castro's excited utterances. In a hearing outside the presence of the jury, Appellant argued that the statements lacked reliability and therefore did not meet the excited-utterance exception. Appellant further asserted that under *Crawford*, he had the right to cross-examine the witness before Officer Loya testified to the utterances. The trial court found no *Crawford* violation and that the statements were excited utterances. Officer Loya then testified before the jury to Castro's statements.

Later, after Officer Loya, Officer Castenada, Castro, and an investigator from the District

Attorney's Office testified, the State wanted to recall Officer Loya for purposes of admitting Barragan's excited utterances before Barragan testified. The State noted that it did "not want to run afoul of the rule against impeaching a witness that we call." Appellant did not object that calling Officer Loya would violate the *Hughes* rule. The trial court did not believe that the order of witnesses would "make any difference" as the complained-of hearsay statements were admissible as excited utterances, an exception to the hearsay rule, not as impeachment evidence. Further, the trial court was made aware that Barragan received a bad spider bite to her foot and would need to leave. Thus, the trial court instructed the State to call Barragan first.

After Barragan testified, another hearing outside the presence of the jury was had to determine whether Barragan made any excited utterances to Officer Loya. When the parties finished questioning Officer Loya on voir dire, Appellant argued that the statements were not excited utterances. The trial court disagreed and found the statements to be excited utterances. Officer Loya then testified before the jury, and the only objection Appellant raised during his testimony was "hearsay," which was overruled.

We have carefully reviewed the record and cannot find any objection, save the objection made before jury voir dire, claiming that the State's sole purpose in calling Castro and Barragan was to elicit otherwise inadmissible impeachment evidence. Nor has Appellant in his brief attempted to demonstrate that he raised this improper impeachment claim at any time before, during, or after any witnesses' testimony. The initial objection was certainly inadequate to preserve error as Appellant did not obtain an adverse ruling but rather acquiesced to raising any such objections later during the officer's testimony, which he never did. *See Wooten v. State*, 267 S.W.3d 289, 309 (Tex. App. – Houston [14th Dist.] 2008, pet. ref'd) ("Because appellant did not receive an adverse ruling, appellant has not preserved the issue for our review as to the statements appellant made to the

paramedic as contained in the hospital records."). Moreover, Appellant cannot rely on the State's initiation of the possible *Hughes* violation later during trial since Appellant never objected at those times that the State was calling the witnesses solely to impeach their testimony through Officer Loya. *See, e.g., Swain v. State*, 181 S.W.3d 359, 365 (Tex. Crim. App. 2005) (arguments not specifically stated in defendant's motion to suppress or at hearing were not preserved for appeal); *Robinson v. State*, 728 S.W.2d 858, 860 (Tex. App. – Austin 1987, no pet.) (stating that "*appellant has the burden* to offer a timely objection at trial on specific grounds and to obtain a ruling by the court as to the objection") (emphasis added). Simply, Appellant did not follow up on the State's concern with an objection, nor did he raise the complaint now argued on appeal when the State called Officer Loya to the stand. The only objections raised by Appellant and ruled on by the trial court were general "hearsay" objections, but those do not comport with the argument now urged on appeal. *See Goff v. State*, 931 S.W.2d 537, 551 (Tex. Crim. App. 1996) ("Where his trial objections do not comport with his arguments on appeal, appellant has failed to preserve error on those issues."). Because Appellant never raised a timely *Hughes* objection at trial, nor did he obtain an adverse ruling on his premature objection, his complaint is not preserved for our review. *See Starnes v. State*, No. 06-06-00099-CR , 2007 WL 1217339, at *2 (Tex. App. – Texarkana Apr. 26, 2007, no pet.) (mem. op., not designated for publication); *Scott v. State*, No. 01-06-00209-CR, 2007 WL 1119911, at *4 (Tex. App. – Houston [1st Dist.] Apr. 12, 2007, pet. ref'd) (mem. op., not designated for publication); *Castillo v. State*, No. 08-04-00377-CR, 2006 WL 1710062, at *8 (Tex. App. – El Paso June 22, 2006, no pet.) (op., not designated for publication); *Hardeman v. State*, No. 10-01-269-CR, 2003 WL 21357262, at *3 (Tex. App. – Waco June 11, 2003, pet. ref'd) (op., not designated for publication) (cases holding *Hughes* violation not preserved for appellate review when appellant never made the argument to the trial court). Accordingly, Appellant's third issue is

overruled.[4]

**CONCLUSION**

Having overruled Appellant's issues, we affirm the trial court's judgment.


GUADALUPE RIVERA, Justice

July 28, 2010

Before Chew, C.J., McClure, and Rivera, JJ.

(Do Not Publish)

---

[4] Even if we were to conclude that Appellant preserved his complaint for our review, we note that the trial court expressly admitted the statements as excited utterances, not for impeachment purposes. As excited utterances are excluded from the hearsay rule, this was not "otherwise inadmissible" evidence that the State was offering for impeachment purposes. *Compare Hughes*, 4 S.W.3d at 5 (a party may not use impeachment as a mere subterfuge to get otherwise inadmissible evidence before the jury), *with Klein v. State*, 273 S.W.3d 297, 313 (Tex. Crim. App. 2008) (concluding prior statements were not offered to impeach witness's testimony as otherwise inadmissible evidence as the statements rebutted an implied charge of recent fabrication); *see also Hernandez v. State*, No. 03-07-00040-CR, 2010 WL 391850, at *18 (Tex. App. – Austin Feb. 5, 2010, no pet.) (mem. op., not designated for publication) (evidence not admitted to impeach witness but rather to show that defendant had improper intent and to rebut the defensive theories of accident or mistake). Further, nothing in the record suggests that the State knew for certain that Castro and Barragan would change their stories; rather, the State only suspected that they would. *See Kelly v. State*, 60 S.W.3d 299, 302 (Tex. App. – Dallas 2001, no pet.) (finding no *Hughes* violation when "although the State 'suspected' its witness could turn, it had no reason to know this for certain"). Thus, *Hughes* is inapplicable.