*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



★ ★ ★     ★ ★ ★

# OPINION

No. 04-08-00668-CR

Darryl **WELLS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CR-2049
Honorable Bert Richardson, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:    Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Rebecca Simmons, Justice

Delivered and Filed: April 14, 2010

AFFIRMED

A jury found appellant Darryl Wells guilty of the murder of Tim Davila and assessed

punishment at sixty-five years' confinement. On appeal, appellant asserts the trial court erred in (1)

failing to grant his motion for speedy trial, (2) admitting a deceased witness's statements through the

decedent's wife's testimony, (3) admitting a deceased witness's statement identifying appellant as

a suspect through a police officer's testimony, and (4) disallowing an accomplice as a matter of law

instruction in the jury charge. Additionally, appellant asserts the evidence is legally and factually insufficient to support the jury's verdict. We affirm.

## RIGHT TO SPEEDY TRIAL

In his first issue on appeal, appellant argues the trial court erred in failing to grant his motion for speedy trial. *See* U.S. CONST. amend. VI, XIV; TEX. CONST. art. I, § 10; *see also Barker v. Wingo*, 407 U.S. 514, 515 (1972) (Sixth Amendment right to speedy trial under federal constitution applies to states through Fourteenth Amendment). Appellant points out that the police department transferred Detective Robert Moffitt—the detective originally assigned to the case—to another unit and a "new officer sat on the case since he knew appellant was incarcerated." Appellant argues law enforcement (1) failed to question him even though he waived extradition and (2) exhibited bad faith by waiting for his release from an Ohio prison and his return to Sulphur Springs, Texas, pursuant to a detainer before arresting and indicting him. As a result, appellant claims he was not afforded a speedy trial. This, appellant argues, resulted in the absence of a key witness, Marco Toledo, who died of unrelated causes and thus was unavailable for cross-examination by appellant. For these reasons, appellant concludes his conviction should be reversed.

### A. The *Barker* Test

The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges. *United States v. MacDonald*, 456 U.S. 1, 8 (1982). However, the right to a speedy trial does not protect a defendant from all effects flowing from a delay before trial.

*United States v. Loud Hawk*, 474 U.S. 302, 311 (1986). For example, it does not limit the length of a preindictment criminal investigation even though "the [suspect's] knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life." *Id.* at 312 (quoting *MacDonald*, 456 U.S. at 9).

To determine whether the State violated appellant's right to a speedy trial under the state or federal constitution, we weigh and balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the assertion of the right; and (4) the prejudice to the accused. *See Barker*, 407 U.S. at 530 (creating balancing test for reviewing speedy trial claims under federal constitution); *Cantu v. State*, 253 S.W.3d 273, 280 n.16 (Tex. Crim. App. 2008) (although speedy trial right under Texas Constitution exists independently of federal guarantee, claims of denial of State speedy trial right are analyzed under same four *Barker* factors). Once the *Barker* test is triggered, we analyze the speedy trial claim by first weighing the strength of the *Barker* factors and then balancing their relative weights in light of the conduct of both the prosecution and the defendant. *Cantu*, 253 S.W.3d at 281. None of the *Barker* factors is a necessary or sufficient condition to finding a speedy trial violation. *Id.* Rather, the factors are related and should be evaluated in conjunction with any other relevant considerations. *Id.* In reviewing the trial court's ruling, we review the legal components de novo and review the factual components for an abuse of discretion. *See id.* at 282.

**1. Length of Delay**

The *Barker* test is triggered by a delay that is unreasonable enough to be "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *Cantu*, 253 S.W.3d at 281. A delay approaching one year from formal accusation or arrest of the defendant until trial has

generally been found to be presumptively prejudicial. *Celestine v. State*, No. 14-08-00766-CR, 2009 WL 3365893, at *3 (Tex. App.—Houston [14th Dist.] Sept. 10, 2009, no pet.); *see Shaw v. State*, 117 S.W.3d 883, 889 (Tex. Crim. App. 2003); *see also United States v. Marion*, 404 U.S. 307, 313 (1971) (delay is measured from time of formal accusation or arrest to time defendant is brought to trial). Appellant agues "more than three years elapsed before [he] was ever indicted and six years since the death of Tim Davila by the time trial actually came to fruition." The State, however, asserts any speedy trial analysis should not begin until the State executed appellant's arrest warrant and he was taken into custody. We agree with the State.

The shooting death of Tim Davila occurred on January 26, 2003. On February 26, 2003, appellant was arrested in Cleveland, Ohio, on unrelated charges. While serving his time in Ohio, appellant alleges he waived extradition to Texas, which "would have made his return to Texas very easy." However, in Texas, the "mere waiver of extradition does not rise to the level of an assertion of the right to a speedy trial." *Burton v. State*, 805 S.W.2d 564, 573 (Tex. App.—Dallas 1991, pet. ref'd). Similarly, we do not believe that mere waiver of extradition starts the clock for purposes of measuring the length of the delay under *Barker*. As the United States Supreme Court has explained, "either a formal indictment or . . . the actual restraints imposed by arrest and holding to answer a criminal charge . . . engage the particular protections of the speedy trial provision of the Sixth Amendment." *Marion*, 404 U.S. at 320; *Cantu*, 253 S.W.3d at 280 n.15. Therefore, it is not enough that an accused voluntarily submit his person to restraint and holding by the State by waiving extradition while under confinement in another jurisdiction on other charges; rather, the invocation of the right to a speedy trial requires either actual restraint by the State or formal accusation. *See*

*Marion*, 404 U.S. at 320; *Dickerson v. Guste*, 932 F.2d 1142, 1144 (5th Cir. 1991) (detainer does not constitute actual restraint for speedy trial considerations); *see also United States v. Garner*, 32 F.3d 1305, 1309-10 (8th Cir. 1994) (arrest on one charge does not trigger right to speedy trial on another charge filed after arrest).

Here, Bexar County officials executed appellant's arrest warrant and took appellant into custody on December 5, 2006. Appellant was then indicted on March 1, 2007. Appellant's trial, however, was not until August 2008. Thus, for purposes of appellant's speedy trial claim, we consider only the time period from appellant's arrest in December 2006 until his trial in August 2008—a delay of approximately twenty months. This delay exceeds one year and is therefore presumptively prejudicial—a conclusion the State does not dispute—and we proceed to the remaining *Barker* factors.

**2. Reason for Delay**

Once it has been determined that a presumptively prejudicial delay has occurred, the State bears the initial burden of providing a justification for the delay. *Emery v. State*, 881 S.W.2d 702, 708 (Tex. Crim. App. 1994); *State v. Rangel*, 980 S.W.2d 840, 843 (Tex. App.—San Antonio 1998, no pet.). Different reasons for the delay are assigned different weights: an intentional delay for tactical reasons is weighed heavily against the State; a neutral reason, such as overcrowded courts, is weighed less heavily against the State; a valid reason is not weighed against the State at all; and delay attributable to the defendant may constitute a waiver of the speedy trial claim. *State v. Munoz*, 991 S.W.2d 818, 822 (Tex. Crim. App. 1999).

Here, the State points out that during the twenty-month period it filed only one motion for continuance, which was due to the unavailability of a key witness who was out of the country and thus unable to testify. Additionally, the State argues "appellant's difficulties with his appointed counsel caused delays in his case coming to trial." Our review of the record reveals the trial court first appointed an attorney to represent appellant on December 15, 2006—ten days after Bexar County officials took appellant into custody. On February 16, 2007, appellant filed his first motion to dismiss appointed counsel, stating appellant "has already received ineffective assistance of counsel." On March 30, 2007, appellant filed a second motion to dismiss appointed counsel, stating there existed "a great conflict of interest . . . ." On May 22, 2007, defense counsel filed a motion to withdraw, which the trial court subsequently granted. On July 10, 2007, the trial court appointed appellant a second attorney. On February 26, 2008, appellant's second attorney filed a motion to withdraw.[1] The trial court granted the motion and, on the same day, appointed appellant a third attorney: James Tocci. Then, at a June 16, 2008, pretrial hearing, appellant argued before the court his previously-filed motions to dismiss for lack of speedy trial. The trial court informed appellant "it might have something to do with the fact that you have filed grievances or made accusations against your lawyers . . . ." The trial court then concluded appellant was the primary cause of the delays and explained to appellant,

> [I]n all fairness to the lawyers who have been appointed, they are entitled to have time to get ready for trial. They cannot be expected to go to trial even though you may be familiar with the facts of the case, they have an obligation and a duty to review the State's file, especially in light of the charges . . . .

---

[1] The record indicates the attorney withdrew because of a heavy caseload.

Our review of the record supports the State's claim that a substantial portion of the delay was attributable to appellant. But for appellant's complaints against two of his attorneys and a subsequent motion to withdraw by his first attorney, there would have been no need for additional time to allow appellant's new attorneys to prepare. Thus, the State has met its initial burden of providing a justification for the twenty-month delay: it was attributable to appellant. We therefore conclude that this delay tips the scales against appellant.

## 3. Assertion of the Right

The third *Barker* factor requires a determination of whether the defendant asserted his right to a speedy trial. *Barker*, 407 U.S. at 531; *Munoz*, 991 S.W.2d at 825 (both stating defendant must assert or demand his right to speedy trial). A defendant's assertion of that right is entitled to strong evidentiary weight when determining whether the defendant was deprived of his right to a speedy trial. *Barker*, 407 U.S. at 531-32; *Zamorano v. State*, 84 S.W.3d 643, 651 (Tex. Crim. App. 2002).

Appellant asserts he "signed a waiver of extradition on February 26, 2003 based on the [arrest] warrant issued February 3, 2003." As stated earlier, however, the "mere waiver of extradition does not rise to the level of an assertion of the right to a speedy trial." *Burton*, 805 S.W.2d at 573. Nonetheless, after a review of the record, we conclude appellant properly asserted his right to a speedy trial, and, therefore, this factor weighs in his favor.

## 4. Prejudice

The fourth factor is prejudice to the defendant, which should be assessed in light of defendant's interests. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826. These interests are (1) preventing oppressive pretrial incarceration, (2) minimizing the anxiety and concern of the accused,

and (3) limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532; *Munoz*, 991 S.W.2d at 826. Of these interests, the most important is protecting a defendant's ability to adequately prepare his case because compromise of this interest "skews the fairness of the entire system." *Munoz*, 991 S.W.2d at 826 (quoting *Barker*, 407 U.S. at 532). The defendant has the burden to make some showing of prejudice, although a showing of actual prejudice is not required. *Id.* When the defendant makes a prima facie showing of prejudice, the burden shifts to the State to show that the defendant suffered "no serious prejudice beyond that which ensued from the ordinary and inevitable delay." *Id.* (quoting *Ex parte McKenzie*, 491 S.W.2d 122, 123 (Tex. Crim. App. 1973)).

Appellant asserts he was "severely" prejudiced because a key witness, Marco Toledo, died before trial. Appellant argues the State profited from the delay because the trial court admitted into evidence statements made by Toledo to other witnesses, even though appellant had no opportunity to cross-examine Toledo. Appellant also contends he was prejudiced because the testimony of a neighbor was unavailable.

In order to demonstrate prejudice due to the unavailability of a witness, a defendant must, among other things, present proof that the witness would have benefitted his defense. *Harrison v. State*, 282 S.W.3d 718, 722 (Tex. App.—Amarillo 2009, no pet.) Here, appellant has offered no proof that either Toledo or the neighbor would have benefitted his defense. Accordingly, the fourth *Barker* factor weighs against appellant.

## B. Balancing the *Barker* Factors

While the presumption of an unreasonable delay and the assertion of a right to a speedy trial support appellant's position, the State showed and the record supports that the delay after his arrest by Bexar County officials was mostly attributable to appellant. Although asserting a right to a speedy trial carries strong evidentiary weight in determining whether the appellant was deprived of the right, the other factors and circumstances weigh against him. Balancing these factors, we conclude the trial court did not err in denying appellant's motion for speedy trial.

## TESTIMONY OF CATHERINE HERNANDEZ

In his second issue on appeal, appellant argues the trial court erred in admitting testimony from Toledo's wife, Catherine Hernandez. Hernandez testified that on December 4, 2007, Toledo died of heart disease. She then relayed the events of the evening of the murder: Hernandez was at home with Toledo when appellant, an acquaintance of Toledo, came to their apartment; she left the apartment to go to the laundromat; after finishing the laundry she went to her mother's home to pick up her children, at which time she was told there had been a shooting at her apartment; upon returning to her apartment, police were present as well as her husband, who had zip ties on his wrists and duct tape on his ankles. Her testimony then relayed several statements made to her by Toledo; among other things, the testimony identified appellant as (1) the man who had a gun at the time Davila was shot and (2) one of two men who tied Toledo up and dragged him on his stomach into a back room. At trial, appellant raised hearsay objections to Hernandez's testimony, which the trial court denied. On appeal, appellant asserts this testimony was improper hearsay and the excited utterance exception does not apply.

Hearsay is a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted. TEX. R. EVID. 801(d). In order for hearsay to be admissible, it must fit into an exception provided by a statute or the Texas Rules of Evidence. TEX. R. EVID. 802. One such exception is for an excited utterance. An excited utterance is a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." TEX. R. EVID. 803(2); *Salazar v. State*, 38 S.W.3d 141, 154 (Tex. Crim. App. 2001). The basis for the excited utterance exception is a psychological one—namely, the fact that when a person is in the instant grip of violent emotion, excitement, or pain, that person ordinarily loses the capacity for reflection necessary for fabrication, and the truth will come out. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). In other words, the statement is trustworthy because it represents an event speaking through the person rather than the person speaking about the event. *Id.*; *Ricondo v. State*, 475 S.W.2d 793, 796 (Tex. Crim. App. 1971).

We review a trial court's determination of whether evidence is admissible under the excited utterance exception to the hearsay rule for an abuse of discretion. *Wall v. State*, 184 S.W.3d 730, 743 (Tex. Crim. App. 2006). In determining whether a hearsay statement is admissible as an excited utterance, the court may consider as factors the time elapsed and whether the statement was in response to a question. *Salazar*, 38 S.W.3d at 154. The critical determination, however, is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event at the time of the statement. *Id.* Stated differently, a reviewing court must determine whether the statement was

made "under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *Fowler v. State*, 379 S.W.2d 345, 347 (Tex. Crim. App. 1964).

Appellant cites *First Southwest Lloyds Insurance Co. v. MacDowell*, 769 S.W.2d 954 (Tex. App.—Texarkana 1989, writ denied), for the proposition that a "statement that is simply a narrative of past acts or events, as distinguished from a spontaneous utterance, does not qualify as an excited utterance regardless of how soon after the event . . . it is made." *Id.* at 959. In that case, the trial court refused to allow a testifying witness to recount what an eyewitness to a fire had told him. *See id.* The appellate court affirmed, noting that the eyewitness's remarks to the testifying witness "constituted a narrative account, given after he had returned to the fire scene after chasing the fleeing vehicle . . . ." *Id.*

We first note several distinguishing factors between *First Southwest* and the case at hand. First, the eyewitness in *First Southwest* left the scene of the crime and returned some time later to give his statement to an investigator. *Id.* Here, Toledo never left the scene and was telling his wife what had happened; that is, unlike the *First Southwest* witness, Toledo was not responding to questions from an investigator. Second, the *First Southwest* eyewitness was purely an eyewitness without any other meaningful involvement. *See id.* Toledo, on the other hand, was present during the murder, was restrained by the suspects, and still had duct tape across his ankles and zip ties on his wrists at the time he made the statements to his wife. Third, Hernandez testified that at the time Toledo spoke to her he was "completely out of it; just rambling on and didn't make sense at the beginning. And then [he was] really just nervous and scared. Really scared."

We conclude the trial court did not abuse its discretion by admitting under the excited utterances exception Hernandez's testimony about what Toledo told her shortly after the murder occurred. First, it cannot reasonably be disputed that Toledo's statement related to a startling event. *See* TEX. R. EVID. 803(2). Second, Hernandez testified Toledo was "completely out of it," "rambling," and "really . . . nervous and scared," and therefore, her testimony supports the contention that, at the time Toledo made the statements, he was still under the stress of excitement caused by the event. *See id*.

## LEGAL AND FACTUAL SUFFICIENCY

In his fifth and sixth issues on appeal, appellant argues the evidence is both legally and factually insufficient to support his murder conviction. Specifically, appellant contends there is no evidence he shot Tim Davila; therefore, no rational trier of fact could have found beyond a reasonable doubt that he was the shooter, and his conviction was against the great weight and preponderance of the evidence.

We review the sufficiency of the evidence under the appropriate standards of review. *See Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (legal sufficiency); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999) (same); *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006) (factual sufficiency); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996) (same). The standard of review is the same in both direct and circumstantial evidence cases. *Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). The jury, as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony; therefore, reconciliation

of any conflicts in the evidence is within the exclusive province of the jury. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998).

A person commits the offense of murder if he intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b) (Vernon 2003). Also, a "person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." *Id.* § 7.01(a). A person is criminally responsible for the conduct of another if "acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.* § 7.02(a)(2).

Here, ample evidence supported the State's theory that on January 26, 2003, appellant was criminally responsible for the shooting death of Tim Davila. Appellant admitted to the police to being in the apartment when the shooting took place. Catherine Hernandez, who lived at the apartment where the shooting occurred, identified appellant and stated she saw him enter her apartment the evening of the shooting before she left for several hours to do laundry. Hernandez further testified that her late husband—Marco Toledo, who was present when the shooting occurred—told her (1) appellant had a gun at the time of the shooting and (2) appellant and another man tied Toledo's hands with zip ties and his feet with duct tape and dragged him into another room. Police photographs confirm Toledo had zip ties around his wrists, duct tape on his ankles, and injuries consistent with rug burns on his stomach and knees.

Maurice Pineda, a friend of Tim Davila and an acquaintance of Toledo, set up the sale of marijuana from Davila to Toledo. Pineda testified two black men, one of whom he identified as appellant, were in Toledo's apartment when he and Davila arrived. Davila had with him approximately fifty pounds of marijuana. Upon entering the apartment to make the sale, Pineda stated one of the two black men ran at him with what Pineda thought was a gun. Pineda shouted to Davila and then dropped to the floor for cover. He heard several shots fired and kept his eyes closed pretending to be dead. After a short time, he heard people leaving the apartment. He then heard Toledo—whom Pineda subsequently discovered was tied up in another room—say that they had gone. When he opened his eyes, Pineda saw Davila lying on the floor next to him shot in the head.

Six hours later, police arrested appellant and Donald Evans after a traffic stop in Sulphur Springs—a five to six hour drive from San Antonio. During a search of the vehicle, police found large amounts of cash, forty-five pounds of marijuana, duct tape, zip ties, and various firearms, including the murder weapon.

At trial, it was for the jury to determine the credibility of the witnesses and the weight to give their testimony and the evidence adduced. We conclude the evidence was legally and factually sufficient to sustain the conviction based on the State's theory that appellant and Evans worked together to steal Davila's marijuana, an act during the course of which either appellant or Evans shot and killed Davila.

### TESTIMONY OF DETECTIVE MOFFITT

In response to a very brief and narrow line of questioning by the State, Detective Moffitt testified that Toledo identified appellant as a suspect. In his third issue on appeal, appellant argues

the trial court erred in admitting testimony from Detective Moffitt regarding Toledo's identification of appellant because its admission violated appellant's right of confrontation under both the federal constitution and the Texas Rules of Evidence. The State does not dispute that Toledo's statement was an out-of-court testimonial statement or that Toledo was never subjected to cross-examination. Instead, the State argues appellant left a false impression during his earlier cross-examination of another detective, Ramiro Alvear, the detective who investigated the murder the evening it took place:

Q: Did Marco Toledo ever tell you that he saw [appellant] shoot anybody?

A: No, sir, he did not.

Q: And it's true that during the investigation the officers learned that Marco Toledo was not even present when the shooting occurred. Isn't that true?

A: No, sir. I wasn't aware of that.

Q: So you're not aware of that?

A: No, sir.

Q: But the night this happened, Marco Toledo never told you [appellant] shot anybody.

A: That is correct.

The State asserts appellant's cross-examination of Detective Alvear opened the door for the State to correct a false impression—namely, that Toledo never told anyone appellant was the shooter, and moreover, Toledo did not place appellant at the scene the night of the shooting. The State points out it attempted to correct the false impression during its redirect examination of Detective Alvear, but appellant lodged an objection under *Crawford v. Washington*, 541 U.S. 36 (2004). After a lengthy

discussion between the trial court and the attorneys, the State agreed to withdraw the line of questions to Detective Alvear intended to correct the false impression. Therefore, the State argues, it was entitled to correct the false impression during its examination of Detective Moffitt.

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." U.S. CONST. amend. VI. The Confrontation Clause's central concern is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversarial proceeding before the trier of fact. *Lilly v. Virginia*, 527 U.S. 116, 123-24 (1999). Testimonial statements of witnesses absent from trial are admissible over a Sixth Amendment Confrontation Clause objection only where the declarant is unavailable and only where the defendant has had a prior opportunity to cross-examine. *Crawford*, 541 U.S. at 59. However, otherwise inadmissible evidence may be admitted if the party against whom the evidence is offered "opens the door," but the party offering the evidence may not "stray beyond the scope of the invitation." *Schutz v. State*, 957 S.W.2d 52, 71 (Tex. Crim. App. 1997) (quoting *Bush v. State*, 773 S.W.2d 297, 301 (Tex. Crim. App. 1989)). For instance, a party may open the door to the admission of otherwise inadmissible evidence to correct a false impression for which it was responsible. *Renteria v. State*, 206 S.W.3d 689, 697 (Tex. Crim. App. 2006). This exception extends to the admission of evidence that may otherwise violate the Confrontation Clause. *See Goodman v. State*, 302 S.W.3d 462, 473 (Tex. App.—Texarkana 2009, pet. filed) (because defendant opened door to admission of testimonial evidence, no Confrontation Clause violation occurred); *McClenton v. State*, 167 S.W.3d 86, 94 (Tex. App.—Waco 2005, no pet.) (trial court properly admitted officer's

testimony relating co-defendant's testimonial statement where defendant opened door). Because we review de novo whether a trial court's admission of testimony violates Confrontation Clause rights, in this case we independently review whether appellant's cross-examination of Detective Alvear opened the door to the State's questions about Toledo's statements to Detective Moffitt. *See Lilly*, 527 U.S. at 136-37.

We hold defense counsel's cross-examination of Detective Alvear called into question whether Toledo had affirmatively implicated appellant in the shooting. By asking Detective Alvear (1) if Toledo had told him whether Toledo saw appellant shoot anybody, and (2) whether officers had learned Toledo "was not even present when the shooting occurred," defense counsel painted the picture that Toledo never implicated appellant in the shooting. Because these questions cast doubt on whether Toledo had named appellant as the shooter as well as whether Toledo had affirmatively implicated appellant, appellant created a false impression for the jury. Thus, appellant opened the door to the admission of questions regarding whether Toledo had identified appellant as a suspect, and the trial court did not err in allowing the State to ask Detective Moffitt the narrowly-tailored questions regarding the implication of appellant by Toledo. Because appellant opened the door to Detective Moffitt's testimony regarding Toledo's statements, its admission did not violate appellant's right of confrontation.

## JURY CHARGE

In his fourth issue on appeal, appellant argues the trial court erred when it refused to include an accomplice as a matter of law instruction in the jury charge regarding Maurice Pineda. Appellant claims Pineda's "admitted involvement in this drug deal would have clearly implicated [him] as a

party to the offense, and therefore an accomplice as a matter of law because he participated with another before, during, or after the crime." Even assuming the trial court erred in not including the requested instruction, we conclude appellant was not harmed.

The degree of harm necessary for reversal depends on whether the error was preserved. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). Error properly preserved by an objection to the charge will require reversal as long as the error is not harmless. *Id.* This means any harm, regardless of degree, is sufficient to require reversal. *Id.* Here, because appellant properly preserved the alleged charge error, we must determine whether there was any harm, regardless of degree. Appellant argues that the error caused some harm because Pineda's testimony was the "glue" that held the State's case together. We disagree.

Before a conviction may rest upon an accomplice witness's testimony, that testimony must be corroborated by independent evidence tending to connect the accused with the crime. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005); *Druery v. State,* 225 S.W.3d 491, 498 (Tex. Crim. App. 2007). To determine whether accomplice testimony is sufficiently corroborated under the accomplice-witness rule, we must eliminate the accomplice testimony from consideration and then examine the remaining portions of the record to see if there is any evidence that tends to connect the accused with the commission of the offense. *Solomon v. State*, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). Therefore, we exclude Pineda's testimony[2] and look to other corroborating evidence to determine if it connects appellant with the offense. *See id.* (corroborating evidence need not be

---

[2] Pineda testified he thought one of the two black men who ran at him held a gun, but he did not identify appellant as the man with the gun and he did not identify which of the two black men shot Davila.

sufficient by itself to establish guilt); *Cathey v. State*, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999) (if combined weight of non-accomplice evidence tends to connect defendant to offense, then requirement of Article 38.14 is fulfilled).

Here, there was no dispute that appellant was present in the apartment when Davila was shot and killed. Toledo—through Hernandez's testimony—identified appellant as the man who had the gun. Toledo also identified appellant as one of the two men who restrained him with zip ties and duct tape and dragged him into another room. Within six hours of the shooting, police arrested appellant and Evans after a traffic stop and found large amounts of cash, forty-five pounds of marijuana, duct tape, zip ties, and the murder weapon. In sum, even if we exclude Pineda's testimony, the evidence is more than sufficient to connect appellant to the committed offense. Therefore, appellant was not harmed by the omission of an accomplice-witness instruction.

## CONCLUSION

We overrule each of appellant's issues on appeal, and we affirm the trial court's judgment.

Sandee Bryan Marion, Justice

Publish