**AFFIRMED and Opinion Filed December 4, 2024**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

## No. 05-23-00420-CR

**JOEL DAMON FINLEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 073631**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Reichek, and Justice Nowell
Opinion by Chief Justice Burns

Joel Finley appeals his conviction for burglary of a habitation. In five issues, Finley argues the trial court erred when it (1) admitted a 9-1-1 call in violation of the Confrontation Clause, (2) denied his motion for a mistrial based on the introduction of his custodial status, (3) denied his motion for a mistrial based on an alleged violation of the Michael Morton Act, (4) denied him his right to a speedy trial, and (5) convicted him based on legally insufficient evidence. We affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

**Facts**

The evidence at trial established that on May 30, 2021, Finley entered the home of Nicki Anderson in Denison, Texas without authorization. Destiny Kellison, Anderson's son's girlfriend, was present and called 9-1-1 twice. The State introduced both 9-1-1 calls to the jury. Although Kellison was the caller and reported Finley's forced entry through a broken window, the second call captured Anderson's voice in the background as she reprimanded Finley for entering her home and accused him of striking her. During trial, Kellison testified she saw Anderson with a swollen face and heard Finley apologizing to her. The State also introduced photographs showing Anderson's injuries and police officers testified that they observed redness and swelling consistent with an assault. Anderson died on March 17, 2022, 403 days before Finley's trial.

**Analysis**

## I.    Confrontation Clause

We review a trial court's ruling to admit or exclude evidence for an abuse of discretion. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court's ruling constitutes an abuse of discretion only when it falls outside the zone of reasonable disagreement. *Id*. A trial court does not abuse its discretion if its ruling "is reasonably supported by the record and is correct under any theory of law

applicable to the case." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002).

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend VI. This guarantee prohibits the State from introducing testimonial hearsay statements against a criminal defendant unless (1) the declarant is unavailable to testify and (2) the defendant had a prior opportunity to cross-examine the declarant. *Nguyen v. State*, No. 05-20-00241-CR, 2022 WL 3714494, at *6 (Tex. App.—Dallas Aug. 29, 2022, pet. ref'd) (mem. op., not designated for publication). Hearsay is a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d).

The threshold inquiry in analyzing an alleged violation of the Confrontation Clause is whether the hearsay at issue is "testimonial." *Herd v. State*, No. 05-20-00202-CR, 2021 WL 3909914, at *6 (Tex. App.—Dallas Sept. 1, 2021, pet. ref'd) (mem. op., not designated for publication) (citing *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008)); *see also Crawford v. Washington*, 541 U.S. 36, 51 (2004). Finley objected to the State's introduction of Anderson's statements under *Crawford*; therefore, the State bore the burden to establish her statements were either (1) nontestimonial or (2) testimonial but nevertheless admissible. *See De La Paz v.*

–3–

*State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). "Although we defer to the trial court's resolution of credibility issues and historical fact, we review de novo the ultimate constitutional question of whether the facts as determined by the trial court establish that an out-of-court statement is testimonial." *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010).

The United States Supreme Court has identified three types of potentially testimonial statements:

- ex parte in-court testimony or its functional equivalent—that is, materials such as affidavits, custodial examinations, prior testimony that the accused was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;

- extrajudicial statements contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; and

- statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* (citing *Crawford*, 541 U.S. at 51). Anderson's statements were neither in court (or its functional equivalent) nor in any formalized testimonial materials; thus, we focus on whether she made her statements under circumstances that would lead an objective witness to believe that a party would use them at trial.

The State argues that Anderson's statements were nontestimonial because

(1) the caller was describing events as they were actually happening rather than past events; (2) any reasonable listener would recognize that

–4–

the caller was facing an ongoing emergency; (3) when viewed objectively, the nature of what was asked and answered was such that the elicited statements were necessary to resolve the present emergency, rather than simply to learn what had happened in the past; and (4) the caller was frantically answering the 911 emergency operator's questions over the phone in an environment that was not tranquil or even safe.

*See Davis v. Washington* 547 U.S. 813, 826–27 (2006). We disagree because Anderson was not the caller, was not describing anything to government actors, and did not answer any questions. Thus, *Davis* is inapposite.

Instead, the dispositive question is whether Anderson made a solemn declaration or affirmation for the purpose of establishing or proving a fact. *See Crawford*, 541 U.S. at 51 (quoting *Testimony,* 2 N. WEBSTER, AN AMERICAN DICTIONARY OF THE ENGLISH LANGUAGE (1828)). After listening to the 9-1-1 recording, we conclude there is no evidence that at the time Anderson made her out-of-court statements, a reasonable person in her position "would have understood that law enforcement officers were conducting a criminal investigation and collecting evidence for the purpose of prosecution." *Abdullah v. State*, No. 05-23-00163-CR, 2024 WL 1154151, at *3 n.2 (Tex. App.—Dallas Mar. 18, 2024, pet. ref'd) (mem. op., not designated for publication) (quoting *Ramjattansingh v. State*, 587 S.W.3d 141, 159 (Tex. App.—Houston [1st Dist.] 2019, no pet.)). Specifically, Anderson was not speaking to law enforcement and law enforcement did not ask her any questions; instead, Anderson's statements instructed Kellison to call 9-1-1 and angrily responded to Finley's unauthorized presence in her home via a window

he broke. Therefore, Anderson's statements did not constitute a solemn declaration or affirmation and were nontestimonial by definition. *See Crawford*, 541 U.S. at 51. Thus, we overrule Finley's first issue.

## II.     Mistrial based on the presumption of innocence

In his second issue, Finley argues the trial court erroneously denied his motion for a mistrial because the State deprived him of a fair trial and the presumption of innocence when it introduced evidence that he was in custody during trial. *See Holbrook v. Flynn*, 475 U.S. 560, 567 (1986) ("Central to the right to a fair trial . . . is the principle that 'one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial.'") (quoting *Taylor v. Kentucky*, 436 U.S. 478, 485 (1978)); *cf.* TEX. CODE CRIM. PROC. art. 2.03. We review a trial court's denial of a motion for mistrial under an abuse of discretion standard and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010); *see also Becerra v. State*, 685 S.W.3d 120, 127 (Tex. Crim. App. 2024). Rather than substituting our judgment for that of the trial court, we decide whether its decision was arbitrary or unreasonable. *Becerra*, 685 S.W.3d at 127. A trial judge abuses their discretion when no reasonable view of the record could support the ruling at issue. *Id*.

While the State was laying a predicate to introduce Finley's fingerprint card into evidence, a police officer testified that his fingerprints were "taken in the jail." Finley timely objected. The court sustained his objection then offered "to instruct the jury to disregard any mention of that and would say that that's where [the fingerprint] machine is located, is – is in that facility." Finley then objected to the court's proposed "comment on the weight of that – as to where the machine is located" and moved for a mistrial, which the trial court denied. On appeal, the State concedes that Finley's custodial status "was undoubtedly inadmissible and prejudicial testimony, having no relevance to any issue at the guilt stage of trial." We agree.

A mistrial, however, is an appropriate remedy in extreme cases for a narrow class of highly prejudicial and incurable errors. *Turner v. State*, 570 S.W.3d 250, 268 (Tex. Crim. App. 2018). Thus, a trial court should only grant a mistrial "when residual prejudice remains" after less drastic alternatives are explored. *Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009). While requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the trial court could have cured the problem via a less drastic alternative. *Id.* at 885; *Gagliardi v. State*, No. 05-22-01200-CR, 2024 WL 3218216, at *1 (Tex. App.—Dallas June 28, 2024, pet. ref'd) (mem. op., not designated for publication).

In most instances, an instruction to disregard will cure the error. *See Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000) (citing *Wilkerson v. State*, 881 S.W.2d 321, 327 (Tex. Crim. App. 1994), *cert. denied*, 513 U.S. 1060 (1994); *Cooks v. State*, 844 S.W.2d 697, 727 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 927 (1993)); *see also Hewitt v. State*, No. 05-22-00350-CR, 2023 WL 1988839, at *1 (Tex. App.—Dallas Feb. 14, 2023, no pet.) (mem. op., not designated for publication). Under the circumstances, the less drastic alternative of an instruction to disregard was available to rectify any prejudice caused by the improper introduction of his custodial status without resorting to a mistrial. *See Pierce v. State*, 234 S.W.3d 265, 268 (Tex. App.—Waco 2007, pet. ref'd); *accord Hollaway v. State*, 446 S.W.3d 847, 856 (Tex. App.—Texarkana 2014, no pet.).

Ordinarily, a trial court errs when it sustains an objection but fails to give a requested instruction to disregard. *Robledo v. State*, No. 05-20-00109-CR, 2022 WL 2900969, at *5 (Tex. App.—Dallas July 22, 2022, no pet.) (mem. op., not designated for publication). Here, the trial court sustained Finley's objection and offered to both instruct the jury to disregard any mention of Finley being in jail and to inform the jury that the fingerprint card machine was located at the jail. Finley's objection to the court's proposed remedy forfeited appellate review because such an instruction could have cured the prejudice at issue. *See Cruz-Banegas v. State*, No. 05-21-00256-CR, 2022 WL 2255724, at *5 (Tex. App.—Dallas June 23, 2022, pet. ref'd)

–8–

(mem. op., not designated for publication) (citing *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004)). Thus, we overrule his second issue.

### III. Mistrial based on the State's alleged violation of the Michael Morton Act

In his third issue, Finley argues the State violated his rights under the Michael Morton Act when it failed to disclose key evidence in a timely manner. The Michael Morton Act imposes an affirmative duty upon the State "to disclose any relevant evidence that tends to negate guilt or mitigate punishment regardless of whether the evidence is 'material' under *Brady v. Maryland*." *Watkins v. State*, 619 S.W.3d 265, 277 (Tex. Crim. App. 2021). Specifically, Finley contends that a cellphone video recorded by Kellison was not timely disclosed, that it contradicted the State's portrayal of hostility, and that the State's failure to timely disclose contents of the video could have influenced his trial strategy had it been timely disclosed.

To preserve a complaint for our review, the record must show that the party presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012). The record must also show that the trial court "ruled on the request, objection, or motion, either expressly or implicitly" or "refused to rule on the request, objection, or motion, and the complaining party

–9–

objected to the refusal." TEX. R. APP. P. 33.1(a)(2); *Pena v. State*, 353 S.W.3d 797, 807 (Tex. Crim. App. 2011).

Finley requested a mistrial after Kellison testified about a video recording of Finley and Anderson. Kellison testified that it was made available to the State about a month before trial when she showed them the photos of Anderson's injuries. The trial court then ordered the State to provide Finley an opportunity to view the video. However, the record does not contain a ruling on Finley's motion for a mistrial. Without an adverse ruling or refusal to rule by the trial court, Finley has failed to preserve alleged error regarding the motion for mistrial. TEX. R. APP. P. 33.1(a)(2); *Pena*, 353 S.W.3d at 807. Thus, we overrule his third issue.

## IV. Speedy trial

In his fourth issue, Finley argues the State violated his Sixth Amendment right to a speedy trial. U.S. CONST. amend VI; *Barker v. Wingo*, 407 U.S. 514, 515 (1972); *see also Klopfer v. North Carolina*, 386 U.S. 213, 222–23 (1967) (the right to a speedy trial applies to the States through the Fourteenth Amendment). The Texas Constitution similarly guarantees the right to a speedy trial. *Cantu v. State*, 253 S.W.3d 273, 280 (Tex. Crim. App. 2008). "In addressing a speedy-trial claim, the Supreme Court has laid out four factors that a court should consider: (1) the length of delay, (2) the State's reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) prejudice to the defendant because of the length of delay." *Gonzales v. State*, 435 S.W.3d 801, 808 (Tex. Crim. App. 2014) (citing *Barker*, 407

–10–

U.S. at 514). We apply a bifurcated standard of review in a speedy trial analysis; we assess factual determinations against an abuse of discretion and conduct a de novo review of legal determinations. *State v. Lopez*, 631 S.W.3d 107, 113–14 (Tex. Crim. App. 2021). While we defer to the trial court's resolution of disputed facts and to its right to draw reasonable inferences based on those facts, our balancing of the *Barker* factors is a purely legal question that we review de novo. *Gonzales v. State*, 435 S.W.3d 801, 808–09 (Tex. Crim. App. 2014); *Balderas v. State*, 517 S.W.3d 756, 767–68 (Tex. Crim. App. 2016) (citing *Barker*, 407 U.S. at 530).

### *Length of delay and presumptive prejudice*

Before we analyze each *Barker* factor, Finley must show that "the interval between accusation and trial has crossed the threshold dividing ordinary from 'presumptively prejudicial' delay." *State v. Thomas*, 453 S.W.3d 1, 3 (Tex. App.—Dallas 2014, no pet.) (citing *Doggett v. United States*, 505 U.S. 647, 651–52 (1992)). Here, the applicable interval is 694 days between May 30, 2021 (the date of Finley's arrest) and April 24, 2023 (the date he went to trial). *See id.* We conclude Finley has made the requisite showing of presumptive prejudice. *See Cantu*, 253 S.W.3d at 281 n.21 (citing *Doggett*, 505 U.S. at 651, 652 n.1) (noting that courts "have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year")).

### *Reasons for the delay*

Valid reasons for the delay—including those attributable to the defendant—do not weigh against the State. *Rathode v. State*, No. 05-22-01346-CR, 2024 WL 3408266, at *7 (Tex. App.—Dallas July 15, 2024, pet. ref'd) (mem. op., not designated for publication). The record before us reveals several independent reasons for the 694-day delay at issue. First, the second trial court judge assigned to Finley's case provided the context in which his case proceeded to trial:

> I will note for the record that the Court specially set this case for next week once counsel got appointed and up to speed. I believe we've moved, since I've had this case, in an appropriate fashion. Given the fact that we have multiple defendants who have gone to trial that have been in jail longer because -- and we are still recovering from the backlogs of COVID. Which, unfortunately, is not the State's fault; it's not the defendant's fault. It's just the system. And I don't -- there aren't any cases that have come down that I'm aware of that says that I can't consider that, as well, through this process.

We have previously recognized that "Delay caused by the onset of a pandemic cannot be attributed as fault to the State." *State v. Conatser*, 645 S.W.3d 925, 930 (Tex. App.—Dallas 2022, no pet.). Finley's arrest, however, occurred well after the onset of the pandemic.

The record before us contains no evidence that the State ever requested that the trial court reset Finley's case. While the docket sheet shows that Finley was set for trial on February 21, 2022 (267 days after his arrest), the record is silent as to why he did not go to trial that day. *Cf. Ex parte Williams*, 486 S.W.2d 566, 569 (Tex. Crim. App. 1972) (utilizing the trial court's docket sheet to corroborate testimony); *Vaughn v. State*, No. 05-92-02411-CR, 1995 WL 547083, at *1 (Tex. App.—Dallas

–12–

Sept. 7, 1995, no pet.) (not designated for publication) (utilizing the docket sheet as evidence that appellant was represented by counsel). The next setting was May 16, 2022 (351 days after arrest) and Finley did not go to trial until April 24, 2023. Under the circumstances, including Anderson's death on March 17, 2022, we conclude the absence of an explanation for Finley's delayed trial results in a presumption against the State. *See Turner v. State*, 545 S.W.2d 133, 137–38 (Tex. Crim. App. 1976); *see also State v. Burckhardt*, 952 S.W.2d 100, 103 (Tex. App.—San Antonio 1997, no pet.).

Further contributing to the delay, Finley's first attorney filed a motion to withdraw on April 5, 2022 (360 days after Finley's arrest) after Finley stated that he was filing a grievance against him with the State Bar of Texas. Although the record is silent as to when the trial court granted this motion, it appointed new counsel to represent Finley on April 29, 2022. Under the circumstances, any delay caused by this withdrawal is not attributable to the State. *See Rathode*, 2024 WL 3408266, at *7; *see also Wells v. State*, 319 S.W.3d 82, 89 (Tex. App.—San Antonio 2010, pet. ref'd) ("But for appellant's complaints against two of his attorneys and a subsequent motion to withdraw by his first attorney, there would have been no need for additional time to allow appellant's new attorneys to prepare.").

Finley's second counsel filed for a competency evaluation on August 25, 2022 (452 days after his arrest) and the trial court granted this motion on September 13, 2022 (471 days after his arrest). The record shows a psychologist attempted to meet

with Finley on October 6, 2022 (494 days after his arrest) and filed a letter reflecting Finley's unwillingness to participate on October 14, 2022 (502 days after his arrest). This constitutes a valid reason for delay and does not weigh against the State. *Rathode*, No. 05-22-01346-CR, 2024 WL 3408266, at *7.

Finley's second attorney then filed a motion to withdraw on October 19, 2022 (507 days after Finley's arrest) because Finley "was very upset" that she had filed a motion for a competency evaluation; the trial court granted this second motion on November 3, 2022 (522 days after his arrest). We conclude any delay associated with this second motion to withdraw does not weigh against the State. *See Wells*, 319 S.W.3d at 89; *accord Laird v. State*, 691 S.W.3d 30, 39 (Tex. App.—Austin 2023, pet. ref'd) ("Much of the ensuing delay was caused by Laird's frustration with his appointed attorneys, his persistent attempts to 'fire' them, the appointment of new counsel, and the new attorneys' need to review the case.").

Furthermore, the trial court judge recused himself on November 3, 2022 after Finley mentioned that the trial court judge had previously represented him. The presiding judge of the First Administrative Region issued an order the following day transferring the case to a different court. There is no evidence in the record that the State was aware the trial court judge had previously represented Finley, that it was responsible for the judge's recusal, or that it was responsible for the judge not recusing himself earlier. Instead, Finley was solely responsible for the trial court's judge's recusal and for his belated statement that the judge had previously

–14–

represented him. We therefore conclude this factor does not weigh against the State. *Rathode*, 2024 WL 3408266, at *7.

We further conclude that with the exception of delays caused by the Covid-19 pandemic, the foregoing reasons for delay are justifiable. *Cf. Huynh v. State*, No. 05-21-00991-CR, 2022 WL 17261155, at *5 (Tex. App.—Dallas Nov. 29, 2022, pet. ref'd) (mem. op., not designated for publication) ("[E]ven in a pandemic, the Constitution cannot be put away and forgotten."). These justifiable reasons for delay do not count towards our "length of delay" analysis. *Gonzales v. State*, 435 S.W.3d 801, 810 (Tex. Crim. App. 2014) (citing *Barker*, 407 U.S. at 531–32).

### *Assertion of the right to a speedy trial*

Next, we analyze Finley's assertion of his right to a speedy trial. The record shows that Finley sent an eight-page handwritten letter to the trial court dated December 4, 2022 (553 days after his arrest) and that in that letter, he mentions his right to a speedy trial. Specifically, Mr. Finley stated, "Mr. Fallon and the courts also will not acknowledge my [illegible] and request for speedy trial motion for discovery . . . . Please help."

The record is unclear as to whether counsel represented Mr. Finley at the time he filed his letter. "It is well settled that a pro se speedy-trial motion, filed while the defendant has counsel and on which the trial court does not rule, is not subject to appeal." *Porter v. State*, 540 S.W.3d 178, 183 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd), *cert. denied*, 139 S.Ct. 943 (2019); *see also McGregor v. State*, No. 05-

02-00992-CR, 2003 WL 22511149, at *1 (Tex. App.—Dallas Nov. 6, 2003, pet. ref'd). For the purposes of our analysis, we therefore assume without deciding that counsel did not represent Mr. Finley on December 4, 2022 and that his letter was timely filed. *Contra Kelly v. State*, 163 S.W.3d 722, 729 (Tex. Crim. App. 2005) (characterizing a motion to dismiss on speedy trial grounds filed a year after arrest as tardy). We nonetheless conclude that Mr. Finley's letter did not adequately invoke his right to a speedy trial because it was not unambiguous. *Henson v. State*, 407 S.W.3d 764, 769 (Tex. Crim. App. 2013) ("A speedy-trial demand should be, at the very least, unambiguous.").

The record also shows that Finley filed a motion to dismiss based on the denial of his right to a speedy trial on April 5, 2023 (675 days after his arrest) and an amended motion on April 17, 2023 (687 days after his arrest). However, the record is devoid of (1) any hearing on either of Mr. Finley's assertions, (2) a request for a hearing, or (3) a ruling. *See Cook v. State*, 741 S.W.2d 928, 940 (Tex. Crim. App. 1987), *vacated on other grounds*, 488 U.S. 807 (1988) ("[T]here is no evidence beyond the two motions for speedy trial filed with the district clerk that appellant asserted his right to a speedy trial by requesting hearings to present evidence on the matter."); *see also Reed v. State*, No. 05–14–00516–CR, 2015 WL 4485550, at *2 (Tex. App.—Dallas July 23, 2015, no pet.) (mem. op., not designated for publication) ("Filing for a dismissal instead of a speedy trial will generally weaken a speedy-trial

claim because it shows a desire to have no trial instead of a 'speedy' one.") (citing *Cantu*, 253 S.W.3d at 283).

The absence of a ruling on either purported invocation of Finley's right to a speedy trial means he did not preserve this claim for our review. *Fletcher v. State*, No. 05-17-00750-CR, 2019 WL 1033865, at \*3 (Tex. App.—Dallas Mar. 5, 2019, pet. ref'd) (mem. op., not designated for publication) ("To preserve a speedy-trial claim for appellate review, a defendant must: (1) raise the claim before trial begins, (2) present evidence of the claim to the trial court, and (3) obtain a ruling after presentation of evidence of the claim."); *see also* TEX. R. APP. P. 33.1.

### *Prejudice to the defendant because of the length of delay*

Under the unique circumstances, the only relevant prejudice is Finley's inability to call Anderson as a witness. Anderson died on March 17, 2022. Thus, we conclude Finley suffered prejudice based on his inability to call Anderson as a witness at his February 21, 2022 scheduled trial, but not thereafter.

### *Balancing*

We must weigh the strength of each of the above factors and then balance their relative weights in light of the conduct of both the prosecution and the defendant. *Zamorano v. State*, 84 S.W.3d 643, 648 (Tex. Crim. App. 2002). As no factor possesses talismanic qualities, we must engage in a difficult and sensitive balancing process in each individual case. *Id.* Although Covid-19 at least partially caused the 694-day delay at issue, this delay was too long under the circumstances and the first

–17–

267 days thereof caused Finley prejudice because it deprived him of the opportunity to call Anderson as a witness at trial through no meaningful fault of his own.

We weigh these important facts against (1) the absence of an unambiguous invocation of Finley's right to a speedy trial until more than 650 days after his arrest (and more than 375 days after Anderson died); (2) his failure to secure a ruling thereon; and (3) the reasons for the delay. *See Henson*, 407 S.W.3d at 769; *see also Cantu*, 253 S.W.3d at 283 ("If a defendant fails to first seek a speedy trial before seeking dismissal of the charges, he should provide cogent reasons for this failure. Repeated requests for a speedy trial weigh heavily in favor of the defendant, while the failure to make such requests supports an inference that the defendant does not really want a trial, he wants only a dismissal."); *Fletcher*, 2019 WL 1033865, at *3. Under these circumstances, we conclude (1) the length of the delay was presumptively prejudicial; (2) five of the six reasons for the delay do not weigh against the State; (3) Finley's first mention of his right to a speedy trial was ambiguous; (4) Finley's first mention of his right to a speedy trial was not filed before Anderson's death on March 17, 2021; and (5) Finley's motion to dismiss based on his right to a speedy trial was filed more than a year after Anderson's death. Thus, we conclude the balance favors the State and that the State did not deprive Finley of his constitutionally protected right to a speedy trial. We therefore overrule Finley's fourth issue.

## V. *Legal sufficiency*

In his fifth issue, Finley challenges the sufficiency of the evidence to support his conviction. Specifically, he contends that although "the evidence presented at trial established that [he] entered a habitation without the effective consent of the owner," the evidence failed to establish that he either attempted to commit an assault or committed an assault after his entry. *See* TEX. PENAL CODE § 30.02(a)(3). We disagree.

We review evidentiary sufficiency under the familiar *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 894, 901–02 (Tex. Crim. App. 2010). We review all the evidence and reasonable inferences in the light most favorable to the verdict to determine whether a jury could rationally find guilt beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We consider whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018).

The essential elements of burglary are (in relevant part) entering a habitation without consent and committing an assault therein. TEX. PENAL CODE § 30.02(a)(3). A person commits the offense of assault if the person intentionally or knowingly causes bodily injury to another. TEX. PENAL CODE § 22.01(a)(1). "Bodily injury" means physical pain, illness, or any impairment of physical condition. *Id.* § 1.07(a)(8).

Finley argues no rational jury could have found the elements of burglary beyond a reasonable doubt because the State offered no evidence that he committed or attempted an assault after entering Anderson's home. We disagree based on (1) Anderson's admissible statements on the 9-1-1 recording; (2) Finley's apology, and (3) evidence from three separate sources supporting the jury's reasonable inference that she suffered bodily injury.

First, Kellison's previously addressed 9-1-1 call reveals Anderson berating Finley for breaking into her home and telling him that he had "lost [his] . . . mind" and "hit [her] upside the head." The testimony of a single witness to an offense can provide legally sufficient evidence for a conviction. *Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971); *Barajas v. State*, No. 05-19-01479-CR, 2021 WL 2470375, at *3 (Tex. App.—Dallas June 17, 2021, no pet.) (mem. op., not designated for publication).

Second, Kellison testified at trial that after Finley broke into their home, she saw Anderson getting up from the kitchen floor holding her swollen and red face. She also testified that Finley apologized for hitting Anderson. *See Smith v. State*, No. 03-11-00597-CR, 2013 WL 5288908, at *6 (Tex. App.—Austin Sept. 17, 2013, pet. ref'd) (mem. op., not designated for publication) (evidence of an accused's apology is admissible to show consciousness of guilt); *cf. Ward v. State*, No. 05-09-00804-CR, 2010 WL 1224376, at *3 (Tex. App.—Dallas Mar. 30, 2010, no pet.) (not designated for publication) (a defendant's apology showed consciousness of guilt

–20–

when viewed in connection with other evidence). "A consciousness of guilt is perhaps one of the strongest kinds of evidence of guilt." *Torres v. State*, 794 S.W.2d 596, 598 (Tex. App.—Austin 1990, no writ) (cleaned up) (citing 2 ROY R. RAY, TEXAS PRACTICE, LAW OF EVIDENCE § 1538, at 242 (3d ed. 1980)).

Third, three separate witnesses provided circumstantial evidence that Finley struck Anderson. Officers Rojas and Cox from the Denison Police Department both observed redness and swelling and concluded that in their experience, such injuries are consistent with assault. "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *O'Reilly v. State*, 501 S.W.3d 722, 726 (Tex. App.—Dallas 2016, no pet.). Further, Kellison's photograph of Anderson corroborates this testimony because it depicts swelling and redness on the side of Anderson's face.

After viewing all the evidence in the light most favorable to the verdict, we conclude a rational trier of fact could have found the essential elements of burglary of a habitation beyond a reasonable doubt. Thus, we conclude Finley's conviction is supported by legally sufficient evidence and overrule his fifth point on appeal.

*          *          *

Having overruled each of Finley's five issues on appeal, we affirm his conviction.

230420f.u05
Do Not Publish
Tex. R. App. P. 47.2(b)

/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOEL DAMON FINLEY, Appellant

No. 05-23-00420-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 073631.
Opinion delivered by Chief Justice Burns. Justices Reichek and Nowell participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 4th day of December, 2024.